Case Numbers 181165 and 181166. Bushwald Capital Advisors LLC v. Sault Ste Marie Tribe et al. Oral argument not to exceed 15 minutes per side. Mr. Rapoway for the appellate. Good morning, Your Honors. I'd like to reserve three minutes for rebuttal, if I may. All right. Thank you, Judge Clay, and may it please the Court. Section 106A of the Bankruptcy Code abrogates the sovereign immunity of a, quote, governmental unit. And governmental unit is a defined term under Section 10127. It includes a foreign or domestic government, which is to say any government at all. Now, Indian tribes are plainly governments within the ordinary meaning of the term, as the Supreme Court has called them on many occasions. That is why they get sovereign immunity in the first place. So tribes clearly fall within the broad language of the statute that abrogates immunity for all governments, whether they're foreign or they're domestic. And that's what the Ninth Circuit concluded in the Crystal Energy case, the only other circuit decision to reach this question. Well, I thought the Seventh Circuit ruled the contrary. Isn't that correct? The Seventh Circuit was dealing with a different statute, Your Honor, in the Myers case, and it expressly said that it did not need to weigh in on the present question and that it was not agreeing with either the Ninth Circuit or the Eighth Circuit's bankruptcy appellate panel in Whitaker. Okay. What statute was the Seventh Circuit dealing with? If it's not this statute, which one? That was FACTA, Your Honor, which I believe is the Fair and Accurate Credit Transactions Act, and it has a different language in it. In particular, the FACTA authorizes a cause of action against a broad range of entities, some of which are sovereign and some of which are not. Now, it does include in that long list the phrase any government, but it includes both sovereign and non-sovereign governments. So there would be a reason to think that FACTA might have the problem that the Supreme Court recognized in Itascadero, where you have a whole bunch of entities, some are sovereign and some are not, merely authorizing a cause of action against that large group does not clearly abrogate sovereign immunity of the sovereign entity that might happen to be included in that group. Was that the rationale of the Seventh Circuit's decision? I mean, the Seventh Circuit said a lot of things, Your Honor, and it did indicate that it tended to agree with the Whitaker view, but it did not reach the question and made clear it was not reaching the question of how to construe Sections 106A and 101-27 of the Bankruptcy Code. Thank you. So there's no dispute that Congress has the power to abrogate tribal sovereign immunity if it chooses to do so and expresses its intent clearly. And courts determine whether Congress expressed a clear intent to abrogate immunity by applying the traditional tools of statutory construction. And the foremost tool of statutory construction is, of course, the language of the statute read in its entire context. And we think Congress's intent here is clear from 106A and 101-27 read in the context of the Bankruptcy Code as a whole. It is entirely clear from Section 106A that there is no immunity for anything that qualifies as a governmental unit. And it is clear from Section 101-27 that governmental unit includes not only federal, state, local governments, foreign states, and all the agencies and instrumentalities you might expect, but also it includes the phrase or other foreign or domestic government. Okay, just, you know, just arguing that it's clear and, therefore, it's clear on its own is just conclusory to me. The other side says, yeah, it's clear, but it's clear the other way. So I think we've got to get beyond the argument that it's obviously clear. I think you've got to get past that. I will certainly do that, Your Honor. I would begin with the ordinary meaning of the term government, which is an organization that exercises political authority on behalf of its members. The tribe does that. I would also point to a number of cases in which the term government has been used to refer to Indian tribes specifically. That includes the Bay Mills case, the recent Bay Mills case, which referred to sovereign immunity itself as one of the tribe's governmental attributes. So the tribe can assert immunity because and only because it has governmental attributes, that is to say it is a government. There's the Kiowa tribe case, which said, and I will quote, that the doctrine of tribal immunity from suit might have been thought necessary to protect nascent tribal governments. There's the Santa Clara Pueblo case in which the Supreme Court said that tribal immunity helps protect, quote, a tribal government's ability to maintain authority. There's the Fidelity and Guarantee case. That's one of their authorities, which refers to, quote, Indian nations with their unusual governmental organization and peculiar problems. And there's the Turner case, which is the genesis of modern tribal immunity, as the Supreme Court explained, in Kiowa tribe. And that nation, sorry, the Turner case, excuse me, said that the Creek Nation had the same immunity as, quote, other governments, municipal as well as state. So I think that's sufficient to establish that the ordinary meaning of the term government would encompass an Indian tribe. I will point out as well that it's in the record that the tribe's own constitution refers to it as a government or as having governmental attributes on several occasions. Well, it's the issue of whether the references to governments, the Congress would be expected to specifically reference Indian tribes, which would be very easy for them to do if they wanted to include that in the applicable statute, don't you think? Well, they certainly could have done that, Your Honor, but the question is whether they had to in order to make themselves clear. And our view is that if the language of the statute is clear and it has a clear application to the facts, then the fact that Congress chose one form of clear words rather than another form. But the argument is it's not clear that they wanted to include Indian tribes if they didn't say so. That's the argument contrary to what you're arguing. That is the argument on the other side, Your Honor, and I think it reduces to the argument that Congress can never clearly refer to Indian tribes except by using the specific words Indian tribes. And that is what I would characterize as an argument that Congress has to use a particular form of words to make the obligation clear. And that was rejected by the Supreme Court as it applied to federal sovereign immunity in Cooper. And I think that Justice Scalia's concurrence in the Delmuth case is also informative, rejecting the same argument as it applied to states. He provided the fifth vote, but he wrote for the majority in Delmuth. That case doesn't have anything to do with the Indian tribes. It does not, Your Honor, but the standard is the same as it applies to federal and state and tribal immunity. In the Santa Clara Pueblo case, I believe it is, where the Supreme Court adopted the requirement of an unequivocal expression of intent to abrogate. It took that requirement from cases involving federal sovereign immunity, such as United States v. Teston. So I think they are the same line of cases, and although there are certainly some differences, the general approach to statutory construction is clear and it runs through all of the relevant Supreme Court authority. Do you concede that Indian tribes historically have been treated differently than other units of government, that they've been given maybe special protection, special deference, or special consideration? I mean, I see that running through the cases. I mean, I think at that level of generality, Your Honor, I would certainly agree with the statement. But the question whether you would apply a different statutory canon of construction, I would not agree to in the context of immunity. I think it's the same rule across the cases. And I would also point to some language in Bay Mills recently decided, where the court said that the difference between tribal sovereign immunity and federal or state sovereign immunity is that Congress can take it away. That's the primary difference between the two. Otherwise, they're sovereigns and are treated as sovereigns for purposes of immunity issues. And so that, I think, supports our view. Well, we know that tribal sovereign immunity is up to Congress. That's well established. But there's so much language in the cases that say that when Congress wants to address or affect Indian rights, that it does so expressly or explicitly. That sort of position is what you're swimming upstream against to some extent here. Well, I think it is expressed. I mean, certainly 106A is expressed. It takes immunity away everywhere that the phrase governmental unit applies. And then governmental unit is expressed because it includes the phrase other foreign or domestic governments, which there is dispute. But I don't think there's real dispute that the ordinary meaning of that phrase would cover Indian tribes. And so that's expressed. It is broad, but it is expressed. Is there any legislative history in support of your position? There is not, but it wouldn't do me any good anyway, Your Honor, since the court has said that you can't look to legislative history for purposes of abrogation of sovereign immunity. So for me, it's clear that governmental, any government would include an Indian tribe. I don't know how one could argue that it doesn't. But the rub here for me is we have other places where Congress has stated in other statutes when it specifically wanted to abrogate tribal sovereign immunity. And I'm trying to stick with the appropriate construction, as you argue, and yet what do I do with those other situations where Congress seems to be saying, shouldn't be surprised Congress is making it difficult for us, I suppose, seems to be saying that with tribal immunity you have to, or affecting tribes, you have to do or say something more. We can't rely on legislative history. We have to rely on the statute and what it says. You say black, they say white. Help me out here on this other stuff that I'm trying to reconcile. So I think, Your Honor, that you look, you say, one point which I would make generally is Congress can achieve the same things in different statutes using different words if it wants to. Justice Breyer, when he was a judge in the First Circuit, wrote that. We have it in our reply brief. But more broadly, I think you would look at what Congress was trying to do in 101-27. Trying to do or what they actually did? Intended to do and did, Your Honor. Intended? We enforce the law as Congress wanted to do as opposed to what words they put into the statute? Not at all, Your Honor. Intended is reflected in the words. What Congress did, I'll withdraw the statement, Your Honor. What Congress did in 101-27 is to sweep in every type of government of whatever kind. And it had a reason to do that in the bankruptcy code that it does not have in other types of statutes because one of the core policies underlying the federal bankruptcy law is uniformity. They wanted to make sure that every government in the world was treated the same way, even foreign governments, which is unusual because usually you would think that to look at issues of foreign sovereign immunity, you would look at the Foreign Sovereign Immunities Act, a totally separate statute, which is said to be comprehensive in many cases about foreign sovereign immunity, but no, not in the bankruptcy code. They said every government, domestic or foreign, every government in the world. And so if you think that tribes are governments, and I think you should agree with that, then you should conclude that Congress's intent here was clear across the board. Now I see my time is expiring, Your Honor. I would like to address waiver briefly if that would be helpful to the Court, but I'd also like to keep my rebuttal time. So would you like to hear about waiver? Your time, unless you get a question, you may proceed as you choose. All right. Then I'll save the rest for rebuttal, Your Honor. All right. Thank you. Good morning, Your Honor. I'm Grant Cowan. I'm here on behalf of the Sault Ste. Marie tribe of Chippewa Indians and the Kuwait Casino Gaming Authority. As a matter of federal law, Indian tribes enjoy tribal sovereign immunity. They are immune from suit. They're also a domestic government, right? Your Honor. Yes, no, then explain. I'm sorry? Yes or no, and then explain. Well, it depends on the context in which you're asking that question. They have never been referred to as domestic governments by the Supreme Court, except with the exception of Judge Sotomayor's descending or, excuse me, concurring opinion in the 2014 Bay Mills case. They have been referred to as tribal governments by the Supreme Court, but not domestic governments. And the issue is, in this case, the waiver, the congressional waiver, and including the tribe's consensual waiver, must be clear, expressed, unambiguous, and cannot be implied. Specifically with respect to abrogation, congressional abrogation, it cannot be implied. It must be unequivocally expressed, and it must be done so in unmistakably clear language in the text of the statute itself, and counsel is correct. We cannot rely upon the legislative history. In fact, according to the Supreme Court in the Delmuth case, you all must determine with perfect confidence, perfect confidence that Congress in 1978, when it passed this law, intended to include Indian tribes in the term governmental units. Well, address opposing arguments. Comment at the end that Congress's intent was clear. We're dealing with a bankruptcy code, a code intended to apply to everyone everywhere. What other governmental unit, however you want to describe it, is excluded other than tribes, Indian tribes? Is there any other one you can name me that would be excluded? I don't know if I can name a governmental unit that's excluded from the purview or the coverage of the bankruptcy code, but the Supreme Court has made clear that the fact that a statute applies generally to a party or an entity, including Indian tribes, does not mean that they, therefore, have given up their tribal sovereign immunity. And, Your Honors, if you look at the history and what Congress would have understood about Indian tribes in 1978, because the core of their argument is that Congress, when it passed this law in 1978, would have understood Indian tribes to be a domestic government. And if you look at the actual precedent and what Congress had done at or around that time and what the Supreme Court had done at or around that time, it is not clear that that's the case. In fact, it's highly doubtful. And why do I say that? Well, in 1973, excuse me, 74, Congress passed the Safe Drinking Water Act, by which they purported to abrogate tribal sovereign immunity. How did they do that? They defined a person who could bring a whistleblower claim to include municipality. And what did they define municipality to include? Municipality includes, the definition specifically, an Indian tribe. And, therefore, the Tenth Circuit in the Osagie case, which we cite, was able to conclude that, if you look at the definitional section of the statute, it specifically includes Indian tribes in the definition. The same is true two years before the Bankruptcy Code was enacted. In 1976, when Congress passed the Resource Conservation and Recovery Act, there citizens are permitted to bring compliance suits against persons. Persons are defined to include municipalities. Municipalities are defined to include an Indian tribe or an authorized tribal organization. And in the Blue Legs case, the Eighth Circuit was able to conclude, therefore, that Congress had clearly abrogated tribal sovereign immunity. In the Bay Mills case, which originated from this court, the Supreme Court, in a footnote, footnote 11, gave an example of where Congress has abrogated tribal sovereign immunity. And they cited to the Arizona Water Settlements Act. And in that case, sovereign immunity was clearly abrogated in the statute as to the United States and the community, capital C, the community was defined to specifically include an Indian tribe, the Gila River Indian tribe. Unlike those statutes, there is no mention, no reference to Indian tribes or Indians in the Bankruptcy Code. Is it your position that Crystal Energy is simply wrong, or can you distinguish it? It is. It is our position, Your Honor, that it's simply wrong. Now, it's not just our position. It's the Myers Court, the Seventh Circuit, that said it's wrong. It's the N. Ray Whitaker case and the legion of cases that have come after it. I can tell you why we believe it's wrong, if that would help. But, yes, the short answer is we believe it is incorrectly decided. And let me just give you one specific example, which I think is so important. And, actually, that word important is important. Crystal Energy relied on two cases, the Kimmel case, a 2000 Supreme Court decision, and the Osagie case, the one I just mentioned. And what they said is, in those two cases, Congress abrogated Indian tribal sovereign immunity. In both of those cases, the statute specifically referred to Indian tribes. How did the Crystal Energy Court get around that? They said, we think that's unimportant. We think it's unimportant that, in the two cases they rely upon, the statute specifically referred to Indian tribes. So your position is, if there's general language, whether it's municipalities or any governmental unit, there will be no tribal immunity unless somewhere I can find the word tribal, Indian tribes, or something like that. Is that your position, yes or no? That is my position. But I would say to your Honor, the issue really is, has Congress clearly, unmistakably, unequivocally, in the express language, made its intent clear? Yes. If they use the words Indian tribes, that would be clear. How else might they do it? Well, they might use the term tribal governments. That perhaps, okay. But, your Honor, in 1978, six months before that act was passed, the Supreme Court had an opportunity to address and describe what Indian tribes are and what they are not. And that is in the Santa Clara case, six months before Congress passes the Bankruptcy Act. And, in fact, according to Supreme Court jurisprudence, we can presume that they were aware of that case. And what the Santa Clara Pueblo case said about what Indian tribes are, they said Indian tribes are distinct, independent, political communities retaining their original natural rights in matters of local self-government. Although no longer possessed of the full attributes of sovereignty, they remain a separate people with the power of regulating their internal and social relations. And I think this is the important part. The tribes remain quasi-sovereign nations, which by government structure, culture, and source of sovereignty are in many ways foreign, foreign to the constitutional institutions of the federal and state governments. So what they said six months before Congress passed an act that is supposed to have unequivocally abrogated the tribal sovereign immunity by use of the frayed domestic government, they said Indian tribes are different from foreign and state governments. And, therefore, it's against that backdrop that you have to look at whether or not we can say, you can say with perfect confidence that Congress intended to abrogate tribal sovereign immunity. I mean, this is an issue of law, but it's their claim, I mean, that the tribe has sovereign immunity absent a clear expression by Congress in the statute. Is there any sort of burden of proof on this legal question since they want to abrogate the tribal immunity, which exists otherwise? And if we find the argument of a burden of persuasion, I should say, if we find both positions equally persuasive, do you win? Or do we, I mean, is there any burden of proof here? Well, there is the burden of proof that the party that is bringing the claim has the burden of establishing subject matter jurisdiction, and at least with respect to the Sixth Circuit, the question of whether or not a tribe enjoys or a party enjoys immunity is a question of subject matter jurisdiction. So, yes, they bear that burden. If we find that the positions are equally as persuasive, then they have their burden of proof, Your Honor. But what I would submit to you, one other reason why I think that I would respectfully submit you can't find that they are the same, and there was some discussion during counsel's arguments about canons of construction. The Supreme Court has made clear in the Montana v. Blackfeet tribe case, and I'm quoting, the standard principles of statutory construction do not have their usual force in cases involving Indian law. What they went on to say is that a statute of construction that does apply in Indian law cases is that statutes are to be construed liberally in favor of the Indians with ambiguous provisions interpreted to their benefit. Your Honor, we've cited a number of cases that have rejected the theory or that rejected the holding in crystal energy. I do think the Seventh Circuit case is persuasive. Now, it is correct that it did not involve 106. It involved, I think, a statute that, quite frankly, had much broader language, purported to abrogate tribal immunity as to any government. And they flatly rejected the crystal holding and said that essentially what you're trying to do, the whole idea of is a tribe a government, is it a domestic government, you're trying to shoehorn Indian tribes into that definition, and that's precisely what we cannot do. Your Honor, because I anticipate that my colleague will address the waiver issue, tribal waiver issue, in his reply, I probably ought to turn to that issue unless there are questions. Actually, you know, he can't, in rebuttal, bring up something that hasn't been presented before. But you can talk about it anyway. That's fine. No, why don't you do it? I don't know if we'll be strict about the rebuttal arguments. Fair enough. Let me talk, if I could, about the express waiver argument on behalf of the tribe. So, again, waiver, whether it's consensual or by congressional abrogation, must be unambiguous. It must be clear. And for consensual tribal waiver, it must be expressed. We believe this case, the issue on consensual waiver by the tribe, is controlled by this Court's decision in the Memphis Biofuels case, where the Court said that a tribe can choose to expressly waive its sovereign immunity one of two ways. It can do so either in its charter or by an agreement. It's undisputed in this case that neither applies in this case. There is no agreement, as there was in the Memphis Biofuels case, where a tribal official signed an agreement that had language that specifically waived the tribe's sovereign immunity. And this Court said, yes, but the tribe's charter controls, the tribe's charter in that case, required that essentially tribal sovereign immunity be done pursuant to a duly adopted board resolution. There's something that seems a bit unfair to me, that the tribe can consent to bankruptcy court proceedings, then through its agency, you know, oh, no, I want out. I don't really want bankruptcy court's help at all. Isn't there something that is inconsistent about that? You get the benefit, none of the risk. Your Honor, respectfully, I don't know if that's just a generic question or as it applies to this case, because in this case, I don't think that's factually what happened. But I would submit to you that the courts are legion. The Supreme Court has made it clear, if an Indian tribe files a suit, goes into federal court, which it did in the U.S. versus U.S. F&G case, which it did in the Oklahoma Band of Potawatomi Indians case in 1991, went into federal court and filed a suit, the court said that consents to jurisdiction to determine that claim, but it does not open them up to a counterclaim, even a compulsory counterclaim, a cross-claim, or any sort of a direct action. I would submit to you that the Supreme Court and this Court has reflected on some of the apparent unfairness of when tribal sovereign immunity can benefit tribes. That's in the Bay Mills case. That's in the Memphis biofuels case. It's in the district court's opinion. But it is for Congress to address those issues, not the court. And in this case, there really isn't any type of the inequitable issues. Our client, the tribe, did not sign an agreement that said they purported to waive tribal immunity. They didn't mislead anybody by saying we are waiving sovereign immunity. They simply participated limitedly in the bankruptcy by filing proofs of claims and at all steps of the way reflecting and indicating to the court that they were not waiving their arguments. And in fact, in the plan of confirmation, the bankruptcy court made clear that the tribe was not waiving its sovereign immunity. They did not open themselves up to a suit for this adversary proceeding for fraudulent transfers. And they by no means expressly waived their tribal sovereign immunity. Thank you. Thank you very much. Any more questions? Thank you. Thank you, Your Honors. Judge Griffin, I'd like to briefly address your point about the burden of proof. I think the way to look at this case is that the question is whether the statute is clear. If it is clear that Congress intended to abrogate, then we prevail. If it is ambiguous, then they prevail. And it's like reading any other statute. And I think if you look at the statutory analysis that the Supreme Court did in Bay Mills, it looks like any other statute in which there is a clear statement rule. That is the analysis before the court, and I think that's the decision the court has to make. Your opponent cites the Montana case saying that standard principles of statutory construction do not apply when it comes to Indian tribes. And I think that the clear statement rule embodies the benefit that is given to Indian tribes in this context. I don't think that Montana, Blackfeet said, or that there's any other case that said, not only do you apply the clear statement rule, but you then put an additional thumb on their scale in applying the clear statement rule beyond that. There's just one question. Is the statute clear? I want to go briefly back to Santa Clara, Pueblo, which counsel for the tribe quoted from in trying to tell your honors what Congress would have had on their mind when they enacted the Bankruptcy Code in 1978. In the phrase that he quoted, it referred to tribes having a governmental structure. If Congress had gone and looked at that case to determine whether a tribe was encompassed and they had read the phrase that he picked out as most favorable to his position, they would have seen the Supreme Court using the word government to refer to Indian tribes. I'd like to refer the court briefly to the parts of our brief where we talk about the problems that their construction would create. This is reinforcement of the plain language. It wouldn't be enough on its own. But the fact that treating a tribe as not being a governmental unit would mean they could not take advantage of the special rights and privileges that apply to governmental units, which was a very important point for the Ninth Circuit in the Crystal Energy case. I would also like to point out that Crystal Energy, the only case on point, undisputedly supports us. It's been good law for 15 years. Congress has repeatedly amended the relevant parts of the Bankruptcy Code and has shown no discomfort with that rule, which has been the prevailing rule at the circuit level. On waiver, we think that Memphis Biofuels is distinguishable because it did not address litigation conduct whatsoever. We cite the briefs, not only the opinion, but the briefs in that case in our brief and show that it did not address the question presented here. And I think that as the case comes to this court, with the unusual circumstance that the facts that support our alter ego contentions were essentially conceded for purposes of this motion, it is very much as if the tribe had come directly to the Bankruptcy Court and asked for bankruptcy relief. And I think it's clear that having done so, it would have opened itself up to the type of action at issue here as within core bankruptcy jurisdiction. The argument that Congress was aware of Crystal Energy's decision, 2004 decision, and has not acted since that, well, the Seventh Circuit's decision was, let's see, I thought it was 2006, I'm not sure, but the Seventh Circuit's... 2016. 16, okay. Yeah. And the amendments... My notes say that several district courts and bankruptcy panels have followed the Seventh Circuit, and I've got just a series of authority that have gone the Seventh Circuit's way, which appears to me like it's probably the majority view as opposed to the Crystal Energy case, which I think if you add them all up is probably the minority view. So if we're actually looking for Congress not acting and ratifying decisions of the courts, isn't the Seventh Circuit's position the predominant view? Well, the amendments, first, I don't think the Seventh Circuit directly weighed in on this issue, Your Honor. Well, it's a different statute, but the way they interpret the statute as not applying to Indian tribe sovereign immunity is the important element here. And I think the statute there, as your adversary argues, is actually broader to abrogate immunity as to any government without qualification at all. But, okay, my question is, is the Seventh Circuit position the majority, or is Crystal River the majority? You know, we've cited, we did our best to collect the significant decisions on this point in our... How do they add up? I think it depends on whether you give extra weight to bankruptcy appellate panels as well as bankruptcy court decisions, Your Honor. How about district court? There's not very many of those. I couldn't give, Your Honor. All right. At least maybe evenly divided? That's probably fair, Your Honor. That cuts against your argument you made to me that Congress didn't act and therefore ratified the decision on Crystal River. I think circuit courts get special precedence, Your Honor, as I'm sure this Court would agree. Okay, I agree with that. If the Court has nothing further, I would respectfully request that the Court reverse. Thank you. Thank you. And the case is submitted.